## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **TIMOTHY SHERIDAN,** | **Case No. _____** |
| **Plaintiff,** | **Hon.** |
| | **COMPLAINT** |
| **v.** | |
| **DIVERSIFIED CONSULTANTS, INC., RAFAL LESZCYNSKI and LIVEVOX, INC.** | |
| **Defendants.** | |

## <u>COMPLAINT & JURY DEMAND</u>

Plaintiff, TIMOTHY SHERIDAN, an individual, on behalf of himself and all others similarly situated, by and through his undersigned attorney, sues Defendants and alleges:

### INTRODUCTION

1.     This class action involves the illegal placement of calls by Diversified Consultants, Inc. ("DCI") and by and through its affiliate LiveVox Inc., to hundreds if not thousands of cell phone subscribers using an automatic telephone dialing system and/or artificial or prerecorded messages. DCI and LiveVox use its automated dialers and systems in a predatory way to call consumers to collect accounts. In the course of these collections, it often

wrongly contacts individuals who owe no money or never consented to receiving calls such as the plaintiff in the instant case.

2.     Plaintiff, TIMOTHY SHERIDAN (hereinafter, "Plaintiff" or "SHERIDAN") brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants, Diversified Consultants, Inc., (hereinafter, "Defendant" or "DCI") and its affiliate, sub-contractor, joint venture and /or agent, LiveVox, Inc. (hereinafter, "Defendant" or "LiveVox") in negligently and/or intentionally and repeatedly contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff brings this action for damages on behalf of himself bad all consumers or other protected persons similarly situated, against Defendants for the above referenced violations as well as for violating the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.* or alternatively the Michigan Regulation of Collection Practices Act, ("MRCPA") MCL 445.251 et seq.

3.     DCI and LiveVox acting in concert placed numerous telephone calls to Plaintiff's cell phone using an Automated Telephone Dialing System (ATDS) attempting to collect a debt allegedly owed by a person unknown to Plaintiff and with whom Plaintiff had no relation to.

4.     This case is filed on behalf of Mr. Sheridan and a class of similarly situated individuals for damages to stop Defendants' practice of placing computer generated calls to non-debtors and other individuals who have not consented to being contacted in this manner.

5.     Plaintiff is informed and believes and based thereon alleges that all defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint ventures and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

6.     The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Serves., LLC*, 132 S. Ct. 740, 744 (2012).

7.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors, debt collectors and telemarketers may call them, and made specific findings that

> "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11.

Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

8.     The TCPA gives rulemaking authority to the Federal Communications Commission (FCC) to prescribe regulations to implement the requirements of the TCPA. 47 U.S.C. § 227(b)(2).

9.     The TCPA regulates the use of automated telephone equipment, also known as Automated Telephone Dialing Systems (ATDS), autodialers or robodialers, which have the capacity to store or produce telephone numbers

to be called, using a random or sequential number generator, and to dial such numbers.

10.    The TCPA makes it illegal to use autodialers to place calls to a cellular phone other than for an emergency purpose or with the prior express consent of the called party.

11.    In 2003, the FCC issued a Report and Order addressing, in part, autodialed and prerecorded message calls made to cellular telephone numbers. The FCC affirmed that, with two narrow exceptions, it is unlawful to make *any call* using an automatic telephone dialing system or artificial or prerecorded message to any wireless number. The exceptions, inapplicable to the instant case, include calls made for emergency purposes and with prior express consent.   *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R 14014, 14115-16 (2003).

12.    With respect to autodialed debt collection calls, in a 2008 Declaratory Ruling, the FCC clarified that autodialed and prerecorded or artificial message calls to a cellular phone number by or on behalf of a creditor are permitted only if the calls are made with the prior express consent of the called party. Prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and provided during the transaction that resulted in the debt owed.  *In the Matter of Rules*

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 564-65 (2008).

13.    Although the collection industry has argued to the contrary, the TCPA prohibitions are not limited to telemarketing calls; debt-collection calls are covered. *Mims v Arrow Financial Services, LLC,* U.S. Supreme Court, 421 Fed. Appx. 920 (2012), *Brown v. Hosto & Buchan, PLLC*, 748 F.Supp.2d 847 (W.D. Tenn. 2010); *In re Rules & Regulations Implementing Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 561 (2008) ("ACA Declaratory Ruling"); *Brown v. Enterprise Recovery Systems, Inc*., No. 02-11-00436-CV, 2013 WL 4506582, *5 (Tex.App. Aug. 22, 2013).

14.    A predictive dialer constitutes an automatic telephone dialing system within the meaning of the TCPA.    *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* F.C.C. 07-232, 23 F.C.C. R. 559, 566 ¶ 12 & 13 (Dec. 28, 2007) released Jan. 4, 2008).   In that Ruling, the Federal Communications Commission ("FCC") for a second time rejected the position that a predictive dialer only meets the definition of an ATDS when it randomly or sequentially generates numbers.   Rather, it stated "In this Declaratory Ruling, we affirm that a

predictive dialer constitutes an automatic telephone system and is subject to the TCPA's restrictions on the use of autodialers."  23 F.C.C. R. 559, 566 ¶

15.    Also included in the TCPA definition, is equipment and software which automatically dials telephone numbers stored in data bases and lists.

12.    Dead air calls are the mark of predictive dialers.   As stated by the FCC, "The record before us revealed that consumers often face "dead air" calls and repeated hang-ups resulting from the use of predictive dialers." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 70 Fed. Reg. 19330, 19334  (April 13, 2005).

13.    On July 10, 2015 the FCC released its written Declaratory Ruling and Order, FCC 15-72, (the "FCC Omnibus Order") in response to 21 petitions filed with the agency by various companies and trade associations seeking relief or clarification regarding the TCPA and affirmed its previous orders (2003 and 2008) holding amongst other things, that predictive dialers constituted an ATDS as defined by the TCPA.


### JURISDICTION AND VENUE

14.    Jurisdiction of this Court arises under 47 U.S.C. § 227(b) and 28 U.S.C. §§1331 and 1337.  This Court may exercise supplemental jurisdiction over the state law claims arising out of the same nucleus of operative facts.

15.    Venue is proper in this District Court because Plaintiff resides in this judicial district, the harm to Plaintiff occurred in this judicial district, and Defendants are subject to personal jurisdiction because they conduct business within the Eastern District of Michigan.

### PARTIES

16.    Plaintiff SHERIDAN is an adult natural person and a resident of Lapeer County, Michigan.

17.    Plaintiff is a "recipient" and / or "called party" under the TCPA pursuant to 47 U.S.C. § 227, and Plaintiff SHERIDAN is the named subscriber and user to the cellular phone service of the cell phone number involved. Plaintiff is also a protected person under Michigan State laws governing the activities of debt collectors and in particular, collection harassment of persons who do not owe the debt sought to be collected.

18.    Defendant DCI is a foreign corporation doing business in Michigan, with its principal place of business located in Jacksonville, Florida.

19.    Defendant, LiveVox is a foreign corporation doing business in Michigan, with its principal place of business located in San Francisco, California.

20.    Defendant, Rafal Leszczynski is an individual employee of DCI (Hereinafter LESZCZYNSKI) and is the Director for Operations and Dialing

Systems for DCI and possesses authority over DCI's dialing system commensurate with his title.

## FACTUAL ALLEGATIONS

21.   DCI is a "collection agency" and "licensee" as the terms are defined and used in MOC, MCL §339.916 et seq. Alternatively, Defendant DCI is a "regulated person" as the term is defined and used in MRCPA. MCL §445.251 et seq.

22.   Defendant DCI is a debt collector that specializes in collecting outstanding account balances.

23.   DCI is defined as "any person," prohibited from auto-dialing cellular phone devices pursuant to 47 U.S.C. § 227(b)(1)(iii).

24.   Defendant LESZCZYNSKI is DCI's Director specifically charged with working with LiveVox, the dialing company utilized by DCI to place collection calls and supporting their applications. He is familiar with the DCI telephone hardware and software system and supporting LiveVox applications.

25.   LESZCZYNSKI has authority and control over the DCI autodialing program.

26.    LESZCZYNSKI directs and facilitates the transmission of data from DCI to LiveVox, including the creation and transmission of phone number lists for the LiveVox phone campaigns

27.    LESZCZYNSKI is defined as "any person," prohibited from auto-dialing cellular phone devices pursuant to 47 U.S.C. § 227(b)(1)(iii).

28.    Plaintiff is a "consumer," and "person" as these terms are defined and used in the MRCPA and MOC.

29.    DCI partners with co-defendant, LiveVox, in creating and developing its automated dialing collection campaigns.

30.    LiveVox provides the automated dialing software systems for DCI.

31.    LiveVox also provides Interactive Voice Response ("IVR") systems (LiveVox website IVR page: http://www.livevox.com/applications/ivr/ downloaded September 14, 2015).

32.    LiveVox's IVR systems use pre-recorded voices to guide people through various menus in a telephone communication system.

33.    On information and belief, DCI utilizes the LiveVox IVR technology for its prerecorded voice messaging communications.

34.    The LiveVox system used by DCI is an ATDS. *Lardner v. Diversified Consultants, Inc.*, 2014 WL 1778960 *5 (S.D.Fla. May 1, 2014). *Davis v. Diversified Consultants, Inc.*, 2014 WL 2944864 (D. Mass. June 27,

2014)("the Livevox system, as utilized by Defendant, was an ATDS" at *5; *Echevvaria v. Diversified Consultants, Inc*., 2014 WL 929275 (S.D. N.Y. Feb. 28, 2014), at *5-7. *Haire v Sprint Communications Co., L.P., et al.,* 2:13-cv-00701(N.D. Ala. March 31, 2015).

35.    In *Echevvaria v. Diversified Consultants, Inc*., 2014 U.S. Dist. LEXIS 32136 (S.D. N.Y. Feb. 28, 2014) the Court issued an extensive written decision holding that LiveVox uses a predictive dialer which is an ATDS within the meaning of the TCPA, and granted summary judgment to the Plaintiff.

36.    Likewise, the *Davis* court citing *Echevvaria,* found that "it is undisputed that LiveVox is a 'predictive dialer' that dials from lists of numbers … viewing the facts in the light most favorable to defendant, the evidence demonstrates that defendant used an ATDS to call plaintiff, without his prior consent. Accordingly, plaintiff is entitled to summary judgment that defendant violated § 227 of the TCPA." *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, at 226 (D. Mass. 2014).

## **Allegations relating to Collections against Mr. Sheridan**

37.    Sometime during the summer months of 2014, Defendant DCI commenced placing numerous telephone collection calls to Plaintiff's cellular telephone number, 810-338-7848, with the use of its automated

telephone dialing system (hereinafter "ATDS") in an attempt to collect a debt from an individual named "Daniel Wilson."

38.    Plaintiff does not know Daniel Wilson.

39.    When attempting to answer the calls, there would be dead air and the call would disconnect or a robotic voice would speak.

40.    On some calls from DCI, there would be a clicking noise, dead air and then the call disconnected.

41.    The calls from DCI caused Plaintiff numerous interruptions and disruptions.

42.    Based upon internet consumer complaint forums, there were many other people making similar complaints about being called by DCI from the same caller ID numbers DCI used to call Plaintiff SHERIDAN. (See generally, www.800notes.com)

43.    Moreover, DCI disguised the true origination of the call by falsely using a local telephone pre-fix "313," when in fact the calls were originating from Florida and/or California.

44.    Plaintiff's cell phone number, (810) 338-7848 is registered with the National Do Not Call registry.

45.    On information and belief, DCI utilizes IVR technology for its prerecorded voice messaging communications which requests recipients to hold for a live person.

46.    On information and belief, the debt at issue arises from transactions for personal, family or household purposes which meets the definition under MCL §339.901(a) and / or MCL 445.251(a).

47.    DCI's harassing calls originated from telephone numbers including, but not limited to 313-879-4911, 313-879-0932, and 313-879-3334.

48.    Plaintiff never gave DCI his cellular phone number or consent to call that number.

49.    DCI engaged in deceptive practices by pretending to call from a local Michigan area code when its calls in fact did not originate from Michigan at all.

50.    In promoting its services, DCI advertises that it uses "the most cutting edge technology the industry has to offer." (DCI website "Our Story" page, http://www.dcicollect.com/about/dci-about.html;   downloaded   June   29, 2015).

51.    This technology allows DCI to automatically dial thousands of telephone numbers at extremely low cost, and schedule a pattern of repeated telephone calls at pre-programmed dates and times.

52.     LiveVox was involved in creating and/or implementing DCI's procedure relating to contacting consumers using an automatic telephone system or using an artificial or prerecorded voice.

53.     Plaintiff's cellular telephone number was assigned to a . . . cellular telephone service as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A).

54.     The use of prerecorded and or artificial voice messages evidence that the calls from DCI and/or LiveVox to Plaintiff's cellular phone were made using an automatic telephone dialing system ("ATDS") which had the capability to store and dial telephone numbers in a random or sequential order without human intervention as defined by 47 U.S.C. § 227(a)(1) and/or used an artificial or prerecorded voice prohibited by 47 U.S.C. § 227(b)(1)(A).

55.     The delays, strange clicking noises, long periods of silence or "dead air," the IVR messaging and high rate of abandonment of calls placed by DCI and answered by plaintiff also evidence that the calls from DCI and/or LiveVox to Plaintiff's cellular phone were made using an automatic telephone dialing system ("ATDS") which had the capability to store and dial telephone numbers in a random or sequential order without human

intervention as defined by 47 U.S.C. § 227(a)(1) and/or used an artificial or prerecorded voice prohibited by 47 U.S.C. § 227(b)(1)(A).

56.   DCI used an automatic telephone dialing system as defined at 47 C.F.R. 64.1200(f)(1) to make the above-described calls to Plaintiff's cellular telephones with its ATDS.

57.   DCI made repeated automated calls to Plaintiff's cell phone in violation of the TCPA's prohibitions on automated calls to cell phones.  See 47 U.S.C. 227(b).

58.   DCI used an artificial or prerecorded voice as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A), to communicate with Plaintiff via his cellular telephone.

59.   None of the above-described calls made by DCI to Plaintiff's cellular telephone were made for emergency purposes as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A).

60.   DCI did not obtain Plaintiff's prior express consent as the phrase is used in the TCPA, 47 U.S.C. §227(b)(1)(A) to make the above-described calls to Plaintiff's cellular telephones.

61.   DCI did not have an established business relationship with Plaintiff as the phrase is used in the TCPA, 47 U.S.C. §227(a)(4) when DCI made the above-described calls to Plaintiff's cellular telephones.

62.    Defendants are not tax exempt nonprofit organizations as the phrase is used in the TCPA, 47 U.S.C. §227(a)(4).

63.    Plaintiff did not provide his cellular telephone number to DCI.

64.    Plaintiff did not provide his cellular telephone number to the entity on whose behalf DCI was attempting to collect a debt.

65.    DCI used an automatic telephone dialing system as defined by 47 U.S.C. §227(a)(1) to make the above-described calls to Plaintiff's cellular telephone, without Plaintiff's prior express consent and for a non-emergency purpose, in violation of the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

66.    DCI knowingly violated the TCPA.

67.    DCI willfully violated the TCPA.

### *Respondent Superior Liability*

68.    The acts and omissions of DCI's employee, co-defendant, LESZCZYNSKI, who participated in the design, creation, integration and/or implementation of the telephone systems, hardware, software, configurations, campaign definitions, algorithms and more assisted DCI in calling the plaintiff.

69.    LESZCZYNSKI's actions as described herein constitute a basis for his direct liability and also were committed within the time and scope limits of his agency relationship with his principal, DCI.

70.    The acts and omissions by DCI's agents, including co-defendant LESZCZYNSKI, were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by DCI in collecting consumer debts.

71.    By committing these acts and omissions against Plaintiff, DCI's agents were motivated to benefit their principal, DCI.

72.    DCI is therefore liable to Plaintiff through the Doctrine of *Respondent Superior* for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including LESZCZYNSKI, including but not limited to violations of the TCPA in DCI's attempts to collect this debt from Plaintiff.

## Class Definition and Class Issues

73.    Plaintiff brings this action on behalf of himself and a class of all other persons similarly situated, pursuant to Fed.R.Civ.P. 23.

74.    Plaintiff proposes to represent the following classes:

a.  Autodialer Class:

    "All persons residing in the territorial United States, excluding the
    Court and its staff, who (1) received any non-emergency telephone call from
    DCI (2) to the called party's cellular telephone, (3) made through the use of
    any automatic telephone dialing system or an artificial or prerecorded voice,
    (4) where DCI's records indicate at least one such call was a "wrong
    number" call, whether dispositioned as "wrong number" or as "do not call,"
    or where the person owning the number called was not the person that DCI
    intended to call (5) without the called party giving prior express consent to

be called in that manner, (6) within the four years prior to the filing of the original Complaint in this action."

b.  Prerecorded or Artificial Voice Message Class:

"All persons residing in the territorial United States, excluding the Court and its staff, who (1) subscribed to a cellular telephone to which LiveVox delivered, or conveyed, a prerecorded or artificial voice message in the four years preceding the filing of this action through the date of certification, and (2) whose phone numbers were collected by DCI following receipt of the account, from sources other than the target of the call."

75.    Plaintiff represents and is a member of the Class. Defendant, its employees and agents are excluded from the Class.

76.    Based upon internet complaints to, or regarding, DCI, it appears that the proposed class includes several hundred members if not much more.

77.    The class is numerous, and contains members from all over the United States, making joinder of all plaintiffs impracticable.

78.    This complaint seeks monetary damages under Fed.R.CIv.P. 23(b)(3).

79.    The class claims present common questions of law and fact, including:

a. Whether, within the four years prior to the filing of the original Complaint in this action, DCI/LiveVox made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to the Plaintiff and any Putative Class Member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

b. Whether DCI/LiveVox continued to place calls to the cellular telephone numbers of Plaintiff and Putative Class members despite having information indicating that the called party was not the correct debtor in the transaction subject to collection;

c. Whether DCI/LiveVox had prior express consent to initiate calls to cellular phones of Sheridan and the class members using an ATDS or prerecorded/artificial voice messages;

d. Whether DCI/LiveVox collected numbers from skip traces or consumer reports for autodialing;

e. Whether DCI/LiveVox scrubbed the telephone numbers against cell phone lists prior to inputting those numbers into lists or its auto dialer;

f. Whether DCI/LiveVox's conduct was knowing and/or willful;

g. Whether DCI/LiveVox is liable for damages, and the amount of such damages; and

h. Whether DCI/LiveVox should be enjoined from engaging in such conduct in the future.

f. Whether DCI/LiveVox's conduct was knowing and/or willful.

80. These common questions predominate over any questions involving only individual class members.

81. Plaintiff's claims are typical of the class he seeks to represent, and involve the same legal and remedial theories.

82. Plaintiff will fairly and adequately protect the interest of the class.

83. Specifically,

a. Plaintiff has no adverse interest to the class.

b.    Plaintiff has retained counsel who is experienced in litigation under the TCPA, MOC and the MRCPA.

c.    Plaintiff has suffered similar injuries to the member of the classes he seeks to represent through this action.

d.    Neither Plaintiff, nor his counsel, have any interests which may cause them to not vigorously pursue this action.

84.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

a.    No individual class member could be expected to hold a strong interest in individually controlling the prosecution of separate claims against Defendant because the claim amounts are likely small, and involve statutory damages under the TCPA, MOC or MRCPA.

b.    Management of these claims will likely present few difficulties because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

## COUNT I

### Class Claims for Damages against DCI and LiveVox -
### Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200, et seq.

85.    Plaintiff re-alleges and incorporates the aforementioned paragraphs above as if fully set forth herein, and further states:

86.    Defendants negligently violated the TCPA, 47 U.S.C. § 227 *et seq.* in relation to Plaintiff and the class members.

87.    As a result of Defendants' negligent violations of the TCPA Plaintiff, and the class members, may recover statutory damages of $500.00 for each and every call in violation of the statute. 47 U.S.C. § 227(b)(3)(B).

88.    Alternatively, Defendants have knowingly and willfully violated the TCPA in relation to Plaintiff and the class members.

89.    As a result of Defendants' willful violations of the TCPA, Plaintiff and the class members may recover treble the damages for each and every call in violation of the statute. 47 U.S.C. § 227(b)(3).

## COUNT II

### Individual Claim to Enjoin DCI/LiveVox from Using an ATDS and Artificial and/or Prerecorded Message System

90.    Plaintiff re-alleges and incorporates the aforementioned paragraphs above as if fully set forth herein, and further states:

91.    This Court is authorized it issue injunctive relief under 47 U.S.C. § 227(b)(3).

92.    DCI/LiveVox routinely violates the TCPA as evidenced by the numerous individual and class action complaints against it.

93.    Based on its prior conduct, DCI/LiveVox will continue to use automated telephone dialing and calling systems and prerecorded and or artificial messages to violate the TCPA unless enjoined from further use of the LiveVox or other ATDS or prerecorded messaging systems.

94.     Upon information and belief DCI/LiveVox will claim that it has no record keeping mechanism in place to identify individuals for whom it lacks consent to place automated calls.

95.     Thus, it is necessary and appropriate to enjoin DCI from using the LiveVox dialing system and any other automated calling system until it provides this Court evidence that it has an electronically searchable record system which provides legally sufficient evidence of the called party's consent.

## COUNT III

## Violations of the Michigan Occupational Code Against DCI

96.     Plaintiff re-allege and incorporate the aforementioned paragraphs above as if fully set forth herein, and further states:

97.     DCI is a "collection agency" or "regulated person" as those terms are defined in the Michigan Occupation Code ("MOC"), M.C.L. § 339.901(b).

98.     Plaintiff is a consumer or person whom the act was intended to protect. M.C.L. § 339.901(f).

99.     DCI's foregoing acts in attempting to collect this debt against Plaintiff who does not owe constitutes violations of the MOC.  DCI's violations of the MOC include, but are not necessarily limited to, the following:

    a)      DCI violated M.C.L. § 339.915(n) by using a harassing,

oppressive, or abusive method to collect a debt;

b)      DCI violated M.C.L. § 339.915(q) by failing to implement a

procedure designed to prevent a violation by an employee;

c)      DCI violated M.C.L. § 339.919.

100.   DCI's violations of the Michigan Occupation Code were willful.

101.   Plaintiff has suffered damages as a result of these violations of the

Michigan Occupational Code.


## COUNT IV

## Violations of the Michigan Regulation of Collection Practices Act Against DCI (Alternative to Count III)

102.   Plaintiff re-alleges and incorporates the aforementioned paragraphs

above as if fully set forth herein, and further states:

103.   DCI and its employees/agents are "regulated persons" as defined by

MCL 445.251(g)(xi) in the MRCPA, MCL 445.251, et seq.

104.   Plaintiff is a person whom the act was intended protect, MCL

445.251(d).

105.   DCI's foregoing acts in attempting to collect this debt against Plaintiff

who does not owe, constitute violations of the Michigan Regulation of

Collections Practices Act.

106.   Plaintiff has suffered damages as a result of these willful violations of

the Michigan Regulation of Collections Practices Act.

107.   DCI's violations of the Michigan Regulation of Collections Practices Act were willful.

108.   DCI's violations of the MRCPA include, but are not necessarily limited to, the following:

     a)    DCI violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt.

     b)    DCI violated M.C.L. § 445.252(q) failing to implement a procedure designed to prevent a violation by an employee.

## Demand for Jury Trial

Plaintiff demands trial by jury in this action.

## Claims for Relief

WHEREFORE, Plaintiff, on his own behalf and on behalf of the members of the Classes requests judgment against Defendants as follows:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or its affiliates, agents and/or other related entities' actions complained of herein violate the TCPA.

E. An order enjoining DCI and/or its affiliates, agents and/or other related entities, as provided by law, from using the LiveVox dialing

system or any other automated or artificial or prerecorded messaging system in violation of the TCPA.

F.  An award to Plaintiff and Classes of damages, as allowed by law;

G.  An award to Plaintiff and Classes, of attorneys' fees and costs, as allowed by law and/or equity;

H.  An award to Plaintiff of statutory or actual damages under the MOC or MRCPA, along with costs and attorney fees.

I.  Leave to amend this Complaint to conform to the evidence presented at trial; and

J.  Orders granting such other and further relief as the Court deems necessary, just, and proper.

Dated: January 15, 2016                    Respectfully Submitted,


                                           REX ANDERSON, PC

                                           */s/ Rex C Anderson*
                                           Rex C. Anderson (P47068)
                                           Attorney for Plaintiff
                                           9459 Lapeer Rd. Ste. 101
                                           Davison MI 48423
                                           (810) 653-3300
                                           rex@rexandersonpc.net